The POPULIST PARTY, et al., Plaintiffs,

v.

Robert D. ORR, et al., Defendants.

No. IP 84–1311–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 5, 1984.

Jeffrey S. Rasley, David A. Gray, Price & Gray, Indianapolis, Ind., for plaintiffs.

Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## ORDER

BARKER, District Judge.

This matter came to be heard on plaintiffs' September 20, 1984 complaint for a preliminary and permanent injunction 1) declaring certain of the election laws of the State of Indiana unconstitutional, 2) directing defendants, their agents and employees to place the name of the Populist Party and its certified candidates and presidential electors on the November, 1984 Indiana general election ballot, and 3) for an expedited hearing on the merits. The Court, having heard and considered the evidence and arguments on September 28, 1984, and the briefs of counsel, now issues its findings of fact and conclusions of law. In accordance therewith, plaintiffs' prayer for injunctive relief is DENIED.

### Finding of Fact

1. The Populist Party is a national political organization in the United States which was founded in February, 1984. The Populist Party has affiliate branches in forty-nine (49) states, including Indiana, and candidates for state and federal offices.

2. The Indiana Chapter of the Populist Party was certified as the Indiana affiliate of the national political organization on July 25, 1984.

3. Darlene V. Sartore is the Chairperson of the Central Committee of the Indiana Chapter of the Populist Party.

4. Defendants are officials of the State of Indiana who have varying powers and responsibilities regarding the administration of Indiana state election laws, including members of the Indiana State Election Board. The defendants have been named in this lawsuit in their respective official capacities only.

5. Indiana Code Section 3–1–11–1 requires a political party which previously has not qualified for permanent ballot status to gather signatures of registered voters equal in number to at least two percent (2%) of the total number of votes cast for Indiana Secretary of State in the preceding

general election in which that office was contested, in order to qualify for placement on the general election ballot.

6. The number of signatures of registered voters required for placement on the Indiana General Election ballot for the November, 1984 General Election is thirty-five thousand forty (35,040).

7. In July, 1984, Darlene Sartore contacted the State Election Board to obtain information relating to registration procedures for the Populist Party and its candidates for the 1984 General Election ballot in Indiana. During the last week of July, the State Election Board approved the form of petitions the Populist Party was to use in Indiana to establish support for the placement of the party and its candidates on the 1984 General Election ballot.

8. The Indiana Populist Party began gathering signatures to meet the statutory petition requirements in late July of 1984. Thereafter, approximately one thousand (1,000) signatures were collected and submitted to the respective county election boards for certification pursuant to state law. Of the one thousand (1,000) signatures submitted, however, only three hundred ninety seven (397) were officially certified by the September 4, 1984 deadline set by the State Election Board.

9. By letter dated September 4, 1984, Ms. Sartore was notified by Robert D. Orr, Governor of the State of Indiana, that because the Populist Party was unable to obtain the requisite number of certified signatures, it would not be permitted to appear on the November, 1984 General Election ballot in Indiana. Ms. Sartore received a similar letter dated September 11, 1984, from Craig C. Campbell, Deputy Indiana Secretary of State.

10. On September 20, 1984, plaintiffs initiated this action, seeking a temporary restraining order preventing defendants from distributing ballots for the 1984 General Election in Indiana without including thereon the candidates of the Populist Party. Plaintiffs further sought a preliminary and permanent injunction declaring the election laws of the State of Indiana uncon-stitutional and directing defendants to place the Populist Party candidates on the ballot for the 1984 General Election.

11. The Court was advised on September 20, 1984, that defendants had already mailed for distribution the ballots for the November General Election prior to the filing of this lawsuit. Being so advised, the Court ruled that plaintiffs' motion for a temporary restraining order was moot and the matter was set for expedited hearing on the merits on September 27, 1984.

12. The plaintiffs' request that the Populist Party be placed on the ballot for the November, 1984 General Election in Indiana was rejected by defendants solely because plaintiffs failed to tender the requisite number of certified signatures pursuant to Indiana Code Section 3-1-11-1.

13. The Indiana State Election Board has also rejected requests from the Communist Party and the Citizens Party for placement on the 1984 General Election ballot because those parties also failed to tender the requisite number of certified signatures pursuant to Indiana law.

14. Four parties—the Republican, Democratic, Libertarian and American parties—are on the 1984 General Election ballot because in 1982 their candidates for the office of Secretary of State polled sufficient votes to qualify those parties for permanent ballot status.

15. With the exception of the four (4) parties referred to in Finding 14, all parties seeking access to the 1984 General Election ballot have been required by defendants to meet the petition signature requirement set forth in Finding 5, and no party has been placed on the ballot without meeting such requirement.

16. Plaintiffs introduced no evidence that "but for" the September 4, 1984 deadline, they would have been able to obtain the requisite number of signatures, and, in fact, plaintiffs made no attempt to obtain any signatures after the September 4, 1984 cut-off date.

17. Defendants have imposed no requirements for ballot access on the plaintiffs other than those permitted in Indiana Code Section 3–1–11–1.

18. Plaintiffs have not been treated differently by defendants compared with all other parties seeking placement on the November, 1984 General Election in Indiana.

19. Any conclusion of law stated below, to the extent that it constitutes a finding of fact, is herein incorporated by reference as an additional finding of fact by the Court.

### Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter of this cause. 28 U.S.C. §§ 1331, 1343.

2. The State of Indiana has a compelling interest in requiring candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates. *See Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 1570 fn. 9, 75 L.Ed.2d 547 (1983); *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1979); *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

3. The Indiana ballot access requirement that sufficient support for candidates and parties be demonstrated by a specified number of signatures is a reasonable, non-discriminatory means of protecting the state interest referred to in Finding 2.

4. The two percent (2%) signature requirement set forth in Indiana Code Section 3–1–11–1 does not unreasonably or unfairly encroach on ballot access by the plaintiffs or anyone else similarly situated.

5. The two percent (2%) signature requirement is a constitutionally permissible means of requiring candidates and parties to demonstrate substantial support in order to protect the state's compelling interest. (*See* Conclusion 2).

6. The plaintiffs have failed to state any other cognizable claim under federal law entitling them to relief.

7. The law is with the defendants and against the plaintiffs.

8. Any finding of fact stated above, to the extent that it constitutes a conclusion of law, is herein incorporated by reference as an additional conclusion of law by the Court.

9. Judgment shall be entered for the defendants.

### Memorandum

This is a ballot access case in which the plaintiffs challenge the statutory procedure whereby third party candidates and parties are placed on the general election ballot in Indiana. Plaintiffs also seek an injunctive order directing defendants to place the name of the Populist Party and its candidates on the November, 1984 Indiana General Election ballot.

The specific statute challenged is Indiana Code Section 3–1–11–1, which requires that, in order to be placed on the ballot, a candidate must submit to the State Election Board petitions containing certified signatures of at least two percent (2%) of the total number of votes cast for Indiana Secretary of State in the last general election in which that office was contested. For purposes of the upcoming 1984 General Election, the statute required plaintiffs to submit petitions by September 4, 1984, containing thirty-five thousand forty (35,040) certified signatures of registered voters to the State Election Board in order to appear on the ballot by party affiliation.

After ascertaining from the State Election Board the requirements for registering the Populist Party for the November General Election ballot in July, 1984, *see* Finding 7, the plaintiffs began their signature-gathering campaign. Initially, the plaintiffs relied on volunteers, but in late August the party's national organization contracted with a private consulting firm known as "WCF" to undertake a professional petition drive.

Despite plaintiffs' efforts to gather the requisite number of signatures, only about one thousand (1,000) signatures were obtained by the September 4, 1984 deadline for filing, and of those one thousand (1,000), only three hundred ninety-seven (397) were officially certified as being signatures of registered voters in Indiana. Thus, plaintiffs' petitions were deficient by thirty-four thousand six hundred forty-three (34,643) signatures. Stated otherwise, plaintiffs gathered slightly over one percent (1%) of the minimum number of signatures needed to appear on the November, 1984 General Election ballot.

As stated in Finding 10, *supra*, plaintiffs initiated this action seeking a declaration that the signature requirement in Indiana's ballot access statute unconstitutionally deprives them of their First Amendment rights of free speech and expression, and asking the Court for an order directing defendants to place the Populist Party candidates on the ballot for the November, 1984 General Election, despite their inability to secure the required minimal showing of popular support.

The Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), held, "[a]lthough ... [First Amendment] rights of voters are fundamental, not *all* restrictions imposed by the states on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates. We have recognized that, 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" 103 S.Ct. at 1569 (citation omitted, emphasis added).

The law is well-settled that a state has a compelling interest "in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). *See also, Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 1570, fn. 9, 75 L.Ed.2d 547 (1983); *Lubin v. Panish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974); *Storer v. Brown*, 415 U.S. 724, 740, 94 S.Ct. 1274, 1284, 39 L.Ed.2d 714 (1974); *American Party of Texas v. White*, 415 U.S. 767, 782 fn. 14, 94 S.Ct. 1296, 1307 fn. 14, 39 L.Ed.2d 744 (1974); *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). Certainly, Indiana's interests in regulating ballot access are as compelling as those of other states, even if the particular regulation—here, Indiana Code Section 3–1–11–1 —"inevitably effects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson, supra*, 103 S.Ct. at 1569.

Having determined the existence of Indiana's "compelling state interest" in regulating ballot access, the question becomes whether there are not "significantly less burdensome" or "less drastic" means available to protect that interest. *See American Party of Texas v. White*, 415 U.S. at 781, 94 S.Ct. at 1306. *See also, Libertarian Party of Fla. v. State of Fla.*, 710 F.2d 790, 793 (11th Cir.1983). However, the Eleventh Circuit Court of Appeals in *Libertarian, supra*, found that:

"Obviously any percentage or numerical requirement is 'necessarily arbitrary.' *American Party of Texas v. White*, 415 U.S. at 783, 94 S.Ct. at 1307. Once a percentage or number of signatures is established, it would probably be impossible to defend it as either compelled or at least drastic. At any point, probably a fraction of a percentage point less, or a few petitioners less would not leave the interests of the state unprotected. Any numerical requirement could be challenged and judicially reduced, and then again, and again until it did not exist at all. This is not the thrust of the Court's teachings, however. Rather, a court must determine whether the challenged

laws 'freeze' the status quo by effectively barring all candidates other than those of the major parties, *Jenness v. Fortson*, 403 U.S. at 439, 91 S.Ct. at 1974, and provide a realistic means of ballot access. *American Party of Texas v. White*, 415 U.S. at 783, 94 S.Ct. at 1307. The focal point of this inquiry is whether a 'reasonably diligent [ ] candidate [can] be expected to satisfy the signature requirements.' *Storer v. Brown*, 415 U.S. at 742, 94 S.Ct. at 1285. Thus, the test is whether the legislative requirement is a rational way to meet this compelling state interest. The least drastic means test becomes one of reasonableness, *i.e.*, whether the statute unreasonably encroaches on ballot access. *See Anderson v. Celebrezze*, 460 U.S. at 788 & n. 9, 103 S.Ct. at 1570 & n. 9 (1983) (state's important regulatory interests are generally sufficient to justify reasonable restrictions)."

710 F.2d at 793.

In scrutinizing Indiana's ballot access statute in light of the foregoing authorities, and by comparing the relative burdens it imposes to those countenanced and upheld in other jurisdictions, it becomes clear that Indiana Code Section 3–1–11–1 does not *unreasonably* encroach on ballot access, and certainly not in unconstitutional proportions. Indiana's statute, for instance, is substantially less burdensome than a similar Florida petition requirement of three percent (3%) of all registered voters within the state, which also was upheld as constitutional. *See Libertarian Party of Fla. v. State of Fla., supra.*

In contrast to Florida's requirements, Indiana requires signatures representing only two percent (2%) of the total number of votes actually cast for Indiana Secretary of State in the preceding general election in which that office was contested, rather than of all registered voters in the state. Further, unlike Florida, Indiana charges no fee to verify the signatures. The Indiana ballot access requirement that sufficient support for candidates and parties be demonstrated by a specified number of certified signatures is not only reasonable, it is *imminently* reasonable both on its face and in comparison to standards in many other states.

Plaintiffs' difficulties in obtaining the requisite number of signatures are probably more easily attributable to their inexperience, their late start, and the failure of their paid consultants than to the state's ballot access requirement. As stated in Finding 8, plaintiffs did not begin gathering signatures until late July, 1984; accordingly, they had less than six (6) weeks to demonstrate through the petition procedure "a significant modicum of support." *See Jenness, supra.* To assign fault for plaintiffs' failures to the Indiana statute is at best misplaced blame. It bears repeating that plaintiffs have made no showing that any other party or candidate beset by the same problems and failures would have fared better than they did.

Finally, plaintiffs have argued that these circumstances—where their political party came into existence relatively late but made reasonably diligent efforts to gather the requisite number of signatures—warrant a "waiver" of the statutory requirements and placement of the Populist Party candidates on the ballot. Though plaintiffs argue for an alternative which would vest discretion in the State Election Board to decide on an *ad hoc* basis whether a particular party or candidate "deserves" inclusion, a plain reading of Indiana Code Section 3–1–11–1 makes it clear that no such discretion is permitted. In this respect, plaintiffs' cause is better advanced legislatively rather than judicially.

The evidence demonstrates that defendants and the State Election Board have treated all candidates and parties in a fair and even-handed manner under the statute. *See* Findings 13 through 15. Had the two major parties on the ballot also failed to demonstrate substantial support, they, too, would have been omitted from the ballot. In addition, to waive the signature requirements for the plaintiffs while enforcing them against the Communist Party and the Citizens Party, (*see* Finding 13) would deprive the latter two political organizations

of the very rights plaintiffs seek to enforce in this lawsuit, and surely would subject defendants to discrimination charges from that direction. A discretionary, *ad hoc* approach such as that advanced by plaintiffs holds the potential for invidious and arbitrary abuses far worse than anything plaintiffs have suffered under the present state of the law.

Plaintiffs' prayer for injunctive relief is DENIED. Judgment shall be entered in accordance herewith.